Appeal No. 21-1169

UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

_____

ROCKY MOUNTAIN WILD

*Plaintiffs-Appellants*,

V.

U.S. FOREST SERVICE, U.S. DEPARTMENT OF AGRICULTURE

*Defendants-Appellees*,

_____

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF COLORADO
Case No: 1:18-cv-03065-MEH
Magistrate Judge Michael E. Hegarty

_____

**APPELLANT'S APPENDIX VOLUME III**

_____

Matthew Sandler
Rocky Mountain Wild
1536 Wynkoop St. Ste. 900
Denver, Colorado 80202
(303) 579-5162

Travis E. Stills
Energy and Conservation Law
227 E. 14th Street, #201
Durango, Colorado 81301
(970) 375-9231

Attorneys for Appellants

February 11, 2022

_____

ORAL ARGUMENT REQUESTED

_____

# TABLE OF CONTENTS

| **Volume 1** | |
| --- | --- |
| Docket Sheet | Aplt.App._0001 |
| Freedom of Information Act Request | Aplt.App._0008 |
| Complaint (ECF No. 1) | Aplt.App._0011 |
| Consent to Magistrate Jurisdiction (ECF No. 14) | Aplt.App._0025 |
| MOTION for Order to Direct Plaintiff to Return or Destroy, and Refrain from Using or Further Disseminating, Inadvertently Produced Documents (ECF No. 34) | Aplt.App._0027 |
| Declaration of David Condit (ECF No. 34-1) | Aplt.App._0042 |
| Letter re: Clawback Demand (ECF No. 34-4) | Aplt.App._0047 |
| Friends of Wolf Creek posting of FOIA documents (ECF No. 36-3) | Aplt.App._0051 |
| Records Search Request, Certification, and Billing Form - Gallegos (ECF No. 36-12) | Aplt.App._0055 |
| Records Search Request, Certification, and Billing Form - Perez (ECF No. 36-13) | Aplt.App._0054 |
| Clawback Order (ECF No. 41) | Aplt.App._0055 |
| Defendants' Motion for Summary Judgment (ECF No.49) | Aplt.App._0058 |
| Declaration of Jenna Sloan (ECF No. 49-2) | Aplt.App._0096 |
| Vaughn Index – Cited Pages (ECF No. 49-11) | Aplt.App._0122 |
| Plaintiff's Response to Motion for Summary Judgment (ECF No. 52) | Aplt.App._0208 |

| | |
|---|---|
| Plaintiff's Cross Motion for Summary Judgment (ECF No. 53) | Aplt.App._0252 |
| **Volume 2** | |
| Reply in Support of Defendants' Motion for Summary Judgment and Response to Plaintiff's Cross-Motion for Summary Judgment (ECF No. 58) | Aplt.App._0256 |
| Declaration of Jenna Sloan (ECF No. 58-1) | Aplt.App_0311 |
| LMJV email_Harry Adams (ECF 59-1) | Aplt.App_0312 |
| Summary Judgment Order (ECF No. 61) | Aplt.App._0324 |
| Notice of Appeal (ECF No. 64) | Aplt.App._0372 |
| **Volume 3** | |
| Reply to Cross-Motion for Summary Judgment | Aplt.App._0374 |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-03065-MEH

ROCKY MOUNTAIN WILD, INC.,

   Plaintiff,

v.

UNITED STATES FOREST SERVICE, and
UNITED STATES DEPARTMENT OF AGRICULTURE,

   Defendants.

---

## REPLY TO CROSS-MOTION FOR SUMMARY JUDGMENT

---

   Plaintiff, through Counsel, files this Reply to its Cross-Motion for Summary Judgment. ECF No. 53. Plaintiff's Motion should be granted because there are no genuine issues of material fact regarding the unreasonableness of the search and unlawfully withheld documents.

## INTRODUCTION AND SUMMARY

   Defendants' Response/Reply confirms they failed to conduct a reasonable search and did not adequately justify the withholdings. ECF No. 58. The increasingly heavy burdens the Freedom of Information Act ("FOIA") places on federal agencies have not been met by the *Vaughn* index and conclusory search declarations prepared for this litigation. *United States DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 755 (1989) ("FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" *quoting* 5 U.S.C. 552(a)(4)(B). As recently as 2016, Congress "amend[ed] FOIA to provide for more disclosure of records, through both proactive disclosure and

limitations on the use of exemptions." 114 H. Rpt. 391 at 8.  Although the Response/Reply seeks

to excuse the failure to meet the FOIA burdens, the Court's record supports entry of summary

judgment for Plaintiff in accordance with legislative intent and FOIA's plain language. Further,

the Court's record contains positive indications and direct evidence that undermine the agencies'

reliance on second-hand assertions regarding the unreasonably narrow search and over-broad

assertion of FOIA Exemptions.

The Response/Reply confirms the agency did not carry the agency FOIA burden on

summary judgment to demonstrate a search "reasonably calculated to uncover *all* relevant

documents." *INFORM v. BLM*, 611 F. Supp. 2d 1178, 1184 (D. Colo. 2009) (emphasis added).

The Response/Reply concedes this standard was neither applied nor met, and argues instead that

"FOIA does not require the Forest Service to undertake a sweeping search to unearth every

single potentially responsive document." ECF No. 58 at 40.

The attempt to justify decisions to withhold agency records based on outdated FOIA

standards fares no better.  FOIA presumes disclosure of all records and Congress imposed

several procedural and substantive burdens on agencies seeking to evade public scrutiny based

on nine narrowly drawn FOIA exemptions.

> An agency shall—
>> (i) withhold information under this section *only if* - (I) the agency *reasonably foresees* that disclosure would *harm* an interest protected by an exemption described in [5 U.S.C. 552 (b)]; or (II) disclosure is prohibited by law.

5 U.S.C. 552(a)(8)(A) (*emphasis added*). The requirement to justify withholdings based on the

specifically foreseen harm applies to all FOIA exemptions. 114 H. Rpt. 391 ("The presumption

of openness does not change th[e prohibited by law exemptions], as the specific, identifiable

harm is that the release of the information would be a violation of the law.").

Instead of identifying a harm the agency reasonably fore*sees* as flowing from disclosure, the Response/Reply asserts the abrogated "foresee*able* harm" standard, claiming that "it is not reasonable to require the agency to provide an individualized explanation for the foreseeable harm." ECF No. 58 at 51-2 (*emphasis supplied*).  Congress rejected the agency's notions of foreseeable harm - derided as "withhold it because you want to" (114 H. Rpt. 391) - by codifying the presumption of openness, and imposing a new standard of actually foreseen harm that Plaintiff respectfully requests the Court apply as written, and intended. *Azar v. Allina Health Serv*s., 139 S. Ct. 1804, 1815 (2019) ("courts aren't free to rewrite clear statutes under the banner of our own policy concerns.").

Instead of evidence, the Response/Reply includes an updated declaration of Jenna Sloan, who asserted no direct knowledge or involvement with the underlying search, that is replete with passive statements regarding FOIA responses. ECF No. 58-1 at ¶¶4, 5,10, 13 ("it was determined that").  The filing confirmed, but did not disclose, "contemporaneously created search forms" that were prepared and provide actual evidence of who conducted searches, where the searches were conducted, and the search terms that were used. ECF No. 58 at ¶¶17, 59, I.  Declarations that reconstruct searches and read like statements of fact prepared by litigation counsel should be given little credibility or weight.  By building its entire case on conclusory statements, hearsay, and undisclosed documents, FOIA's uncontested *de novo* standard and unmet agency burdens do not support a narrow remedial search. ECF No. 52 at 18-21.

The incremental and disjointed attempts at FOIA compliance warrant an order directing a new search, with a starting date of January 2008 and an ending cut-off set as date of the Court's order.  Previous attempts to fix faulty FOIA searches on the same subject matter have created a situation where it is impossible to confirm the reasonableness of subsequent searches.  A new,

comprehensive search provides a more practical and efficient resolution than another fill-in-the-blanks approach that builds on previous searches that were conducted without setting basic parameters, such as the temporal scope of any search. *RMW v. U.S. Forest Service*, 138 F.Supp.3d 1216, 1227-1228 (D. Colo. 2015); *RMW v. U.S. Forest Service*, 2016 WL 362459 at *13 (D. Colo. 2016).

## STATEMENT REGARDING MATERIAL FACTS

Initial disclosures did not take place in this FOIA litigation, and the government opposes discovery as a matter of course in FOIA litigation, despite the *de novo* review standard. 5 U.S.C. 552(a)(4)(B).  Plaintiff's access to materials that would normally be exchanged in Rule 26 initial disclosures prevent a FOIA Plaintiff from responding in the manner required by the applicable practice standards. MEH Practice Standards, Section III.F.  Accordingly, Plaintiff's filings comply with the requirement to admit or deny information, and preserves objections based on the lack of knowledge because the facts and evidence is only known to the agency in light of the lack of Rule 26 disclosures and discovery.

Similarly, Defendants' assertion that denials are "not supported by a citation to record evidence" contradicts the applicable summary judgment standard. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). It is well-established that "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Id.*  Pointing to the absence of evidence is particularly appropriate in this FOIA case where there is no judicial record or discovery, and the agencies must carry the burden of proof in this *de novo* proceeding. 5 U.S.C. 552(a)(4)(B).

**REPLY TO PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS**

A.   Defendants admit.

B.   The Forest Service admits that it did not obtain or does not possess agency records to confirm when the Forest Service began consideration of the development proposal.

C.   Defendants admit to the assertion made by LMJV, but deny – without citation – the accuracy of the statement regarding when and how the agency initially engaged in this development project.

D.   Defendants admit that no previous FOIA search referenced in the declarations used a beginning date of 1983 and that no previous FOIA search sought to determine the date when the Forest Service began consideration of the underlying development.

E.   Defendants assert this fact is not material to the issues in this case, but do not deny that in 1984, LMJV filed an application for a land exchange for the purpose of construction of the base area.

F.   Defendants assert this fact is not material to the issues in this case, but do not deny that no previous FOIA search referenced in the declarations used a beginning date of 1984.

G.   Defendants admit that documents created or obtained before 1995 were previously withheld from website publication, other FOIA requests, and/or administrative records based on Exemption 5.

H.   Defendants admit that no previous FOIA determination applied the 25-year limitation on Exemption 5 withholdings or that the 25-year limitation was adopted by the FOIA Improvement Act of 2016. 5 U.S.C. 552(b)(5).

I.   Defendants admit that the FOIA Officer did not require persons carrying out searches to certify which specific computer systems were searched.

J.      Defendants admit that no laptops were identified in the declarations.

K.      Defendants admit that no smartphones were identified or searched.

L.      Defendants deny the withholdings were improper, but do not deny that withholding of phone numbers and email addresses prevented inquiry into the use of laptops, smartphones, and other electronic devices to conduct agency business, and thereby withheld the agency records that may be found on such devices.

M.      Defendants deny this assertion by rewriting the assertion and limiting the response to "unique" records.  Therefore, Defendants admit that all persons identified in the *Vaughn* index are likely to possess hard copy records related to the underlying subject matter.

N.      Defendants deny this assertion by rewriting the assertion and limiting the response to "unique" records.  Therefore, Defendants admit that all persons identified in the *Vaughn* index are likely to possess electronic agency records related to the underlying subject matter.

O.      Defendants admit that all persons identified in the *Vaughn* index did not conduct a search for responsive records.

P.      Defendants deny this assertion by rewriting the assertion and limiting the response to "unique" records.  Defendants do not deny that records are reasonably expected to be located at the Local Offices, State and Regional Offices, Office of General Counsel, and Washington D.C. Offices of the Forest Service and the United States Department of Agriculture.

Q.      Defendants admit that Ms. Gustafson, Mr. Mendonca, Mr. Marks, Mr. Brown, Mr. Bedwell, Mr. Hanna, and Ms. Williamson were not identified as individuals reasonably

likely to have unique, responsive records and therefore their documents were not
searched in connection with this FOIA request.

R.    Defendants rewrite this assertion by limiting the response to "unique" records.  This
assumption is unfounded. Defendants do not deny Plaintiff's assertion of this material
fact, and as such admit that each and every person listed in the *Vaughn* index possesses or
controls responsive agency records. ECF No. 49-11.

S.    Defendants denial attempts to reframe the facts as a legal argument.  Defendants cite to
sections of its argument that affirm the Forest Service did not conduct a search that could
be expected to identify *all* records possessed by each and every person listed in the
*Vaughn* index. Defendants admit the declarations confirm the Forest Service did not
conduct a search that could be expected to identify all records possessed by each and
every person listed in the *Vaughn* index.

## SUMMARY JUDGMENT STANDARD

Defendants do not contest the legal standards that apply to summary judgment.  The
Response/Reply does argue that the facts of the present case do not constitute "bad faith"
required to minimize or eliminate deference to the agency's sole reliance on declarations of
persons who did not conduct the searches. ECF No. 58 at 32-38.  Focusing on "bad faith"
misapprehends the operative standard, which first examines whether the declarations are
"reasonably detailed" and "non-conclusory. ECF No. 52 at 20-21. Although evidence of "bad
faith" was provided, the declarations – particularly in light of known documentary evidence – do
not support summary judgment for the agency.

There is no dispute that when the agency's proffered declarations and documents fall
short of the "reasonably detailed" and "non-conclusory" standard, deference does not rescue the

agency and summary judgment cannot be entered for the agency. *Id*. The agencies here rely on

conclusory declarations that are not reasonably detailed as to the search or the Exemptions,

precluding entry of summary judgment for the agency and preventing the Court from "set[ting]

forth its findings with particularity so that they can be meaningfully reviewed on appeal."

*Anderson v. Health & Human Servs.,* 907 F.2d 936, 952 (10th Cir. 1990).

The Response/Reply does not dispute the standards for entering summary judgment for

Plaintiff if the agency fails to carry its burdens, <u>or</u> if positive evidence confirms FOIA

compliance has not been achieved. ECF No. 53 (Cross Motion) at 20-21.  There is no dispute

that summary judgment relief may include an order for production of withheld records, a new

search, and written agency determinations that can be reviewed, *de novo*, to ensure FOIA

compliance. *Id*.

## ARGUMENT

### I.    FS's Search for Responsive Records Was Not Reasonable

Plaintiff seeks an order directing a search that is "reasonably calculated to uncover *all*

relevant documents" in light of the facts of this particular case.  *INFORM v. BLM*, 611 F. Supp.

2d 1178, 1184 (D. Colo. 2009) (*emphasis added*). The Response/Reply fails to defend its search,

instead forwarding a standard that would allow a search limited to central players that is

designed to uncover some of "the relevant agency records." ECF No. 58 at 40 *quoting SafeCard*

*Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).  Despite the misleading quotation of

*SafeCard*, the D.C. Circuit uses the well-established "*all* relevant documents" standard.

*Steinberg v. United States DOJ*, 23 F.3d 548, 551 (D.C. Cir. 1994) (quotation omitted).

Similarly, this Court consistently requires case-specific proof of "a search reasonably

calculated to uncover *all* relevant documents." *Al-Turki v. DOJ*, 175 F. Supp. 3d 1153, 1211 (D.

Colo. 2016) (*emphasis added*).  "What the agency must show beyond material doubt is that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir 1983).  Material doubt prevents entry of summary judgment. *Id.*, *Steinberg*, 23 F.3d at 551 (D.C. Cir. 1994) (declarations that "do not denote which files were searched, do not reflect any systematic approach to document location, and do not provide information specific enough to enable [the requestor] to challenge the procedures utilized" do not support summary judgment.').

The Court need not, but may, fully resolve bad faith, persistent violations, or other unlawful conduct that raises questions regarding the processing of Plaintiff's FOIA requests to grant Plaintiff's summary judgment request, particularly the narrow searches. *Id*. However, these showings remain properly before the Court, notwithstanding the dismissal of Claims 2 & 3. *Rocky Mt. Wild v. United States BLM*, 2019 WL 233329, 2019 U.S. Dist. LEXIS 7767, at *4 (D. Colo. Jan. 16, 2019). A stand-alone claim is not necessary, and may not even be an appropriate means to pursue a Special Counsel referral. *Id*. For purposes of full relief, the Court may use summary judgment proceedings to enter findings confirming that Defendants' conduct involves *circumstances that raise questio*ns of whether the agencies' limited searches unlawfully, arbitrarily, and/or capriciously withheld agency records. ECF No. 1 at 13 *citing* 5 U.S.C. § 552(a)(4)(F). Entering findings of fact relevant to Special Counsel referral would avoid the duplication of judicial resources if deferred to a post-judgment remedy phase.

### a.  FS's Search Excluded Offices and Employees Likely to have Responsive Records

The FS Response/Reply confirms the agency did not conduct a search carried out by all persons and locations likely to have responsive records. *Friends of Blackwater v. United States*

*DOI*, 391 F. Supp. 2d 115, 122 (D.D.C. 2005) *citing* 43 C.F.R. § 2.22(a)(1).  Instead, the FS

Response/Reply confirms that persons and locations likely to have responsive records were not

searched, based on the proposition that the limited search of those most involved with the

underlying subject matter would disclose all records, including those created or obtained by

persons who did not search.  Excluding persons and locations known to possess agency records

through this scheme violates FOIA, requires a new search, and raises questions that warrant

Special Counsel inquiry.

The Forest Service seeks to justify limiting the search through a "routed through" theory,[1]

but also allowed each custodian to use subjective and unique search terms.[2]  These two

arguments are irreconcilable.  To rely on a theory that not all agency staff need to search because

their communications would be collected by other search custodians would require custodians to

use objectively comprehensive search terms that other non-searching colleagues may have used

to label responsive records.  Alternatively, the use of limited and subjective search terms would

undermine even a search that includes all agency staff that participated in this decision, creating

the game of Battleship problems. *Gov't Accountability Project v. United States Dep't of*

*Homeland Sec.*, 335 F. Supp. 3d 7, 12 (D. D.C. 2018) *quoted by Rocky Mountain Wild v. BLM,*

18-cv-00314-WJM-STV at ECF No. 41 at 16. The agency here limited both the

---

[1] "[C]ommunications relating to the Wolf creek project during that timeframe would have been
*routed through*…one or more of those individuals." ECF No. 58 at 31, ¶P. (*emphasis added*).
These custodians "likely would have originated or *received* communications relating to the Wolf
Creek project during the applicable time period" and it was "not reasonably necessary to search
the files of other individuals because those individuals were unlikely to possess unique
documents *not already captured by the searches* that had been performed."  ECF No. 58 at 41
(*emphasis added*).
[2] Custodians used "terms and phrases used in *their own* documents and communications" ECF
No. 58 at 47 (*emphasis added*).

persons/locations <u>and</u> the search terms to only those "employees having an administrative or primary responsibility or substantive involvement"[3] in the agency analysis and consideration of LMJV's requests, confirming that the search was unreasonable.  Moreover, there is no logical basis for any of the identified custodians to have agency records created or obtained by non-searching agency staff, such as data reviews, call records, or other agency records that may not have been sent to another person, let alone "routed through" a person who conducted a search.

The Response/Reply confirms that only Katie O'Connor, a communications Director in the Forest Service Washington, D.C. Office searched for records. ECF No. 58 at 42.  The *Vaughn* index confirms that other Washington D.C. Office agency staff participated in this decision. ECF No. 49-11 at Entry 819 ("Email chain among USFS individuals and OGC attorney, reflecting attorney mental impressions regarding Wolf Creek Washington Office."), ECF No. 52-9 at 3 ("We are discussing with WO OC again [… Brian] is back in D.C.] Moreover, the extensive entries where author and recipient "are not indicated" leaves substantial doubt. *Id*.

Further, Ms. O'Connor searched only using the single search term "Wolf Creek." ECF No. 49-2 at 12, ¶30.o.ii.  As outlined above, the use of this single search term is not reasonably expected to identify documents created or obtained by other agency staff in the Washington Office who received and/or acted on the briefings routed through Ms. O'Conner. There is substantial doubt as to the assertion that substantive records likely communicated between Washington Office and local/regional decisionmakers and resource specialists would have been routed through the communications director in the same manner as the briefing papers were

---

[3] However, the parameters used to determine this subset of employees is not defined.

routed into the Washington Office. Indeed, there is no evidence, let alone a reasonable inference, that Ms. O'Connor served as a single conduit whereby all Washington Office agency records would be identified by her perfunctory use of a single search term to search "Outlook/email, computer hard drive." *Id.* at 12, ¶30.o.i.

The Response/Reply attempts to create a "substantially involved" standard to justify limiting search custodians. ECF No. 58 at 42.[4]  But, this is not the standard – a search must be "reasonably calculated to uncover *all* relevant documents." *INFORM v. BLM*, 611 F. Supp. 2d 1178, 1184 (D. Colo. 2009) (*emphasis added).*

The Forest Service seeks to justify the failure of Maribeth Gustafson to search for responsive records by providing that she "retired as Deputy Regional Forester in January 2018." ECF No. 58 at 44. However, it is clear that Ms. Gustafson was deeply involved in activities related to Plaintiff's FOIA request prior to her retirement. ECF No. 52 at 24.  Ms. Gustafson was also the point person for agency communications with LMJV. *e.g.* Ex. 1 (Gustafson's 2017 email string with third parties, agency personnel, and counsel). The failure to search Ms. Gustafson's records, emails, and hard copy files (all subject to litigation holds requiring preservation when she retired) was unreasonable.

The Forest Service asserts it did not conduct the systematic search of all locations based on pre-emptively asserting potential exemptions. "The Forest Service also determined that the files of OGC individuals were not reasonably likely to contain unique, responsive documents *not*

---

[4] The Response also asserts that Ms. O'Connor was the only "originator[] of unique documents or communication" in the Washington Office. ECF No. 58 at 42.  There is no basis for this assertion, leaving substantial doubt as to its veracity.  Nonetheless, the lack of any search prevents access to evidence that would support or refute the notion that no person in the Washington Office created documents that were not communicated or otherwise obtained responsive agency records relevant to this controversial subject matter.

*subject to one or more FOIA exemptions*." ECF No. 58 at 43 (*emphasis added*). This logic

clearly puts the cart in front of the horse.  The Response/Reply identifies no authority allowing

an agency to exclude locations and persons from a FOIA search because they may be subject to a

FOIA Exemption - and none exists.

The Forest Service also argues that instead of searching for all responsive records, the

decision to not search for responsive documents was designed to "limit where possible the

unnecessary review of documents that were duplicative, non-responsive, or exempt from

production." ECF No. 58 at 43. Again, this assumption is wholly unfounded and would give the

agency *carte blanche* justification for unlawfully narrowing FOIA searches.  There is no way the

agency could know if a responsive document was duplicative, nonresponsive, or exempt from

production without reviewing the document. It is reasonable to infer that each recipient of an

agency record sent by supervisory personnel caused the recipient to generate some kind of note,

response, or other agency record that was not necessarily sent back to the supervisor.  The

"routed through" argument confirms the agency unreasonably limited the scope of the search to

something less than "*all* relevant documents." *INFORM*, 611 F. Supp. 2d at 1184 (emphasis

added).

The reasonableness of a FOIA search is not based on the "proportion of documents

involving" a specific individual.  ECF No. 58 at 35.  It is troubling that David Loomis, who

clearly possesses responsive records (ECF No. 52 at ¶60), "did not identify any potentially

responsive documents." ECF No. 58 at 35.  Plaintiff has provided more than "speculative claims

about the existence and discoverability of other document[s]" that are outside of the scope of the

agency search.  ECF No. 58 at 36 *citing SafeCard Servs*., 926 F.2d at 1200.  Plaintiff has

highlighted unreconcilable contradictions within the agencies search design and the Court's

record, which confirms that David Loomis had responsive records but his search "identified no documents responsive to the FOIA request." ECF No. 49-2 at ¶31.[5] The arguments and evidence regarding David Loomis casts substantial doubt on the remainder of the agencies' litigation declarations.

The number of documents produced does not "belie[] any speculation that there are significant numbers of responsive documents that have not already been produced." ECF No. 58 at 40. Indeed, the Response/Reply confirms that the production is not the measure of a reasonable search; reasonableness of the search is measured by whether the search the agency personnel actually conducted was a systematic search "reasonably calculated to uncover *all* relevant documents." Al-*Turki v. DOJ*, 175 F. Supp. 3d 1153, 1211 (D. Colo. 2016) (*emphasis added*).  Moreover, tens of thousands of pages were repetitive, duplicative, non-responsive, or unlawfully redacted.   Additionally, any comparison of the number of pages produced to those overlooked would necessarily need to include an understanding of the universe of documents that should have been produced – which is unknown in this case.

The agency fails to meet its burden and relies on an erroneous standard.  The *Vaughn* index contains positive indications (*id.*) that far more personnel possess records that are subject to the litigation hold or otherwise qualified for FOIA Exemptions than the 27 persons who conducted a search. *See e.g.* ECF No. 49-11 (identifying dozens of persons who possessed withheld records); *Id.* at Entries 500, 649, 659, 674, 1241 (more than 50 agency persons sent litigation holds).

---

[5] Notably "[t]he Forest Service does not have contemporaneous record of the specific locations and search terms Dave Loomis used to search his files." ECF No. 49-2 at ¶31.

**b.   Unreasonably Narrow Set of Search Terms**

The Response/Reply seeks to shift the burden by claiming "Plaintiff does not identify any authority specifically *requiring* all records custodians to use the same search terms." ECF No. 58 at 46.  This is incorrect.  Plaintiff has identified the authority establishing that an agency must set forth "the search terms" and systematically apply them in order to carry out a reasonable search. ECF No. 52 at 20 *quoting Al-Turki v. DOJ*, 175 F. Supp. 3d 1153, 1211 (D. Colo. 2016).  The "pattern of […] myopia" involves agencies' use of unreasonable search terms. *Id.* at 21 *quoting Judicial Watch, Inc. v. United States DOJ*, 373 F. Supp. 3d 120, 125 (D.D.C. 2019). The game of Battleship used by DOJ also involves the need to use and set forth reasonable search terms to satisfy FOIA burdens. *Id.* at 26 quoting *Gov't Accountability Project v. United States Dep't of Homeland* Sec., 335 F. Supp. 3d 7, 12 (D. D.C. 2018).  Instead of defending the search terms, the Response/Reply engages in similar games that mischaracterize the authority applicable to determining whether the search terms are reasonable. *Id.*

Instead of setting forth a carefully considered, systematic effort to create a set of search terms, the FOIA officers allowed each person to use arbitrary and limited sets of subjective search terms that were not "reasonably calculated to uncover *all* relevant documents." *INFORM v. BLM*, 611 F. Supp. 2d 1178, 1184 (D. Colo. 2009) (*emphasis added).*

**c.        Unreasonable Search Locations**

The Forest Service Response/Reply confirms that the agency failed to search many locations that would reasonably be expected to contain responsive documents.  Again, conclusory assumptions were made about how agency staff communicated and what devices were used to store and communicate agency records, without providing any evidence to confirm whether the agency assumptions were accurate. This does not carry the agency burden. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (showing an agency burden was not met is discharged by pointing to the absence of evidence). The Response/Reply assumes that agency staff never used personal smartphones or personal laptops to communicate and that smartphones were only used to transmit emails.  In this day and age this assumption is stretching the bounds of reality and all custodians should have been requested to search all electronic devices for responsive records.

### d.  FS Used an Unreasonably Narrow Date Range for its Search

It is impossible to determine the date ranges used in previous searches, which is a well-established means to frame consecutive FOIA Requests. *McGehee v. Central Intelligence Agency*, 697 F.2d 1095, 1105 (D.C. Cir. 1983). Therefore, it is impossible to establish the date range used for the present search, which wrongly assumed regularity in the agency's past FOIA practices. ECF No. 52 at 31-2. Indeed, the Response/Reply merely asserts the dates the searches were conducted, but contains no evidence to establish the date ranges used in previous searches. ECF No. 58 at D (claiming the unknown cut-off dates used in previous searches "are not material").

As confirmed in this litigation, where the searches conducted after March 1, 2019 were limited to documents created before March 1, 2019, there is no evidence to support the notion that the search dates and the cut-off date of the searches were the same. Indeed, divergent search date and cut-off date is typical, requiring a determination based on the specific circumstances of the FOIA request. *RMW v. U.S. Forest Service*, 138 F. Supp. 3d 1216, 1221 (D. Colo. 2015). There is no basis to speculate or make agency-favorable inferences in light of the substantial doubt as to cut-off dates; the agency failed to provide evidence of the date ranges, which is an important element of a FOIA search. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) ("the

burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case.").

On the circumstances of this case, this Court and Plaintiff play a key role in ensuring the agency designs and carries out a systematic new search "reasonably calculated to uncover all relevant documents." *INFORM*, 611 F. Supp. 2d 1178, 1184 (D. Colo. 2009).  To prevent another round of FOIA Battleship involving vague date ranges, persons, locations, and search terms that the Response/Reply asks the Court to uphold as a reasonable FOIA response, Plaintiff respectfully requests the Court include an opportunity for the Court and Plaintiff to preview and approve an agency-proposed remedial search to ensure the search uncovers "information the agency might be reluctant to disclose." *Anderson*, 907 F.2d at 951 (internal quotations omitted).

**2.    The Agencies Failed to Meet FOIA's Heightened Withholding Burden**

Instead of providing proof that any single document warrants withholding based on harm to an interest protected by a FOIA Exemption, the Response/Reply provides nothing as to the specific context linking a recognized harm to the decision to withhold a specific record. ECF No. 58 at 51-54.  Congress rejected this practice by adopting 5 U.S.C. § 552(a)(8)(A), which has been characterized as a "heightened standard" for an agency to overcome FOIA's presumption of public access to agency records. *Ctr. for Investigative Reporting v. U.S. Customs and Border Prot.*, 436 F. Supp. 3d 90, 100 (D.D.C. 2019).  Legislative history, like judicial interpretation of plain language, confirms the agency must "articulate both the nature of the harm and the link between the specified harm and specific information contained in the material withheld." H.R. Rep. No. 114-391, at 9 (2016).  The *Vaughn* index does neither.

Further, the Response/Reply relies on the false notion that a *document* must be shared with a non-privileged individual to waive the asserted attorney-client and attorney work product privileges contained within Exemption 5. ECF No. 58 at ¶74, 102 ("Plaintiff points to no specific instance where a withheld document appeared to have been shared with non-government individuals."). However, the test is not whether it has been shared outside the agency, the test is whether the agency met its burden to show the information is confidential and has never been shared with "third parties" not covered by the privilege. *Mead Data Cent., Inc. v. United States Dep't of the Air Force*, 566 F.2d 242, 253 (1977). Further, counsel's written responses containing 'neutral, objective analyses of agency regulations' are not privileged." *Hornbeck Offshore Transp., LLC v. United States Coast Guard,* 2006 U.S. Dist. LEXIS 14389, at *47 (D.D.C. Mar. 20, 2006). By applying the wrong standard, the agencies fail to delineate which agency personnel even knows about the privileges and which personnel did or did not act to diligently protect the privileged information.

In the Tenth Circuit, "the confidentiality of communications covered by the privilege must be jealously guarded by the holder of the privilege lest it be waived," and courts in this Circuit may "grant no greater protection to those who assert the privilege than their own precautions warrant." *United States v. Ryans*, 903 F.2d 731, 741 n. 13 (10th Cir.1990). The privilege can be waived if agency personnel "engaged in discussions regarding the NEPA issue" with a third party. *Hamrick v. GSA,* U.S. Dist. LEXIS 196307, at *16 (C.D. Ill. Apr. 28, 2015). The discussions in *Hamrick* were far less extensive than discussions between the Forest Service and third parties that were partially disclosed in the *Vaughn* index (ECF No. 49-11) and agency records. *See e.g.* Ex. 1, Ex. 2 ("broad audience" identified with wink emoji), ECF No. 52-4 at 6 (confirming LMJV commitments), ECF No. 52-9 ("LMJV finally got some attention from the

Dept." on FOIA matters); ECF No. 49-11 at Entries 577-85, 1919-24, 1957- (7/7/2017 "LMJV proposal to modify the land exchange agreement" by imposing density limits), 1212, 1288 (7/28-8/2/2017 ANILCA alternatives), 784-5 (10/24-31/2017 LMJV proposals), 793 (10/24/2017 land exchange proposal).

The operative inquiry is whether the agency personnel shared information that is otherwise subject to a FOIA Exemption. "When a matter is communicated to the lawyer with the intention or understanding it is to be repeated to another, the content of the statement is not within the privilege." *United States v. Bump*, 605 F.2d 548, 551 (10th Cir. 1979) ("Even if the privilege exists it is waived when the client voluntarily reveals the information to another or his attorney does so with his consent."). Not a scintilla of evidence has been provided to establish whether or not information contained in the withheld agency records was shared in the extensive phone and email communications between LMJV and the agencies staff and attorneys.  A party claiming the attorney-client privilege must prove its applicability, which is narrowly construed." *Burke v. Regalado*, 935 F.3d 960, 1023 (10th Cir. 2019) *quoting In re Foster*, 188 F.3d 1259, 1264 (10th Cir. 1999). The burden of secrecy is on the agency, and the agency did not meet the burden.

The full extent that the information was provided to LMJV by agency officials, government attorneys, and subordinate conduits, is only known to the agency personnel who possessed the information, and absent discovery or direct judicial intervention, Plaintiff has no means or burden to provide evidence that pierces the veil of secrecy. *Vaughn v. Rosen*, 157 U.S. App. D.C. 340, 484 F.2d 820, 828 (1973) (discussing burdens and noting that "it is within the discretion of a trial court to designate a special master to examine documents and evaluate an agency's contention of exemption"). Instead of supporting the Exemptions, the *Vaughn* index

provides positive, undisputed evidence of specific instances when information was sent back and forth between LMJV and agency personnel that certainly involve calls, documents, text messages, and emails that at a minimum touched upon, and likely waived, the Exemption used to withhold agency records. ECF No. 49-11.

      **a.**      **Defendants Failed to Identify "Specific Harm" from Public Access to Specific Agency Records.**

The Response/Reply erroneously attempts to limit the FOIA Improvement Act of 2016 and the "specific harm" standard to the deliberative process aspects of FOIA Exemption 5. ECF No. 58 at 53-54. It doesn't matter that the standard has seen most adjudication applying the "specific harm" standard involving Exemption 5. The plain language of the "specific harm" standard applies to each of the nine enumerated FOIA exemptions. 5 U.S.C. § 552(a)(8)(A). Therefore, there is no dispute that the agency directed its contractor to apply the wrong legal standard when deciding whether or not to withhold agency records.

Similarly, there is no dispute of material fact to resolve.  Neither the *Vaughn* index nor the Response/Reply provided evidence of "actual harm" that would flow from releasing any withheld records. Therefore, the Cross-Motion can be granted without further inquiry.

Instead of faithfully executing the remedial FOIA legislation, the Response/Reply claims "it is not reasonable to require the agency to provide an individualized explanation for the foreseeable harm associated with releasing each and every one of those documents." ECF No. 58 at 52.  The Response/Reply effectively asks the Court to rewrite the amendment by asserting a reasonableness test, but when faced with plain language, the Court must refuse.  The "actual harm" standard was adopted to stop agency and judicial trends that eroded legislative purpose of

open government based on fanciful and speculative arguments as to "foreseeable harm." That is not the standard.

The Response/Reply asserts purely speculative harms that do not overcome FOIA's presumption of openness. ECF No. 58 at 51-2 (citing litigation declaration). Defendants point to a declaration that merely parrots the legal standards, without linking the assertion to a "specific harm" created by a specific document. *Anderson*, 907 F.2d at 942 *accord Nat'l Day Laborer Org. Network v. United States Immigration & Customs Enf't*, 2020 U.S. Dist. LEXIS 167637, at *16 (S.D.N.Y. Sep. 14, 2020) (collecting cases applying "specific harm" standard).

No actual harm has been identified, and no harm will befall an agency that has been subjected to, and often succumbed to, persistent influence on some agency personnel's efforts attempts to comply with federal law.

b.     **Exemption 5**

Instead of providing proof that any single document warrants withholding based on harm to an interest protected by FOIA Exemption 5, the Response/Reply attempts to exclude attorney-related materials and provides nothing more as to the specific context of the withheld records. ECF No. 58 at 53. The agency proffers are "insufficient to conclude that the documents withheld were sent for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding." *In re Grand Jury*, 475 F.3d 1299, 1304 (D.C. Cir. 2007) (emphasis added) (internal quotation marks omitted). As recently confirmed, even if

> a document was shared with or by an attorney does not magically render a communication privileged. [the agency] must, at the very least, (1) describe with sufficient particularity the nature of the legal issue or issues for which advice was sought; (2) explain whether the communications sought legal advice, conveyed legal advice, or both; and (3) provide evidence that the communications were confidential.

*Ctr. for Biological Diversity v. United States EPA*, 279 F. Supp. 3d 121, 152 (D.D.C. 2017).  The

Reply/Response made no effort to meet a standard that ensures public access is not thwarted by

including an attorney in normal, albeit controversial, agency business. *Id.*

Congress rejected the generic assertions of harm by adopting 5 U.S.C. § 552(a)(8)(A),

which has been characterized as a "heightened standard" for overcoming FOIA's presumption of

public access to agency records. *Ctr. for Investigative Reporting v. U.S. Customs and Border

Prot.*, 436 F. Supp. 3d 90, 100 (D.D.C. 2019).  This "heightened standard" does not exclude

attorney-related aspects of Exemption 5, as the Response/Reply argues based on the irrelevant

notion that most of the post 2016 adjudication of Exemption 5 involves the deliberative process.

ECF No. 58 at 53. None of the cited cases even suggest that the heightened standard applies

differently to the attorney-related materials, confirming the argument lacks any basis in law. *Id.*

Indeed, "the requirement that the agency articulate a foreseeable harm to an interest protected by

an exemption that would result from disclosure" has also been applied to other Exemptions. *Ctr.

for Investigative Reporting v. United States DOL*, 424 F. Supp. 3d 771, 780 (N.D. Cal. 2019)

(Exemption 4); *Sierra Club v. United States EPA,* 2020 U.S. Dist. LEXIS 231770, at *13 (N.D.

Cal. Dec. 8, 2020) (Exemption 6).

This Court is not free to entertain the agency invitation to carve out a government

attorney exemption to the harm standard that does not exist in the text of the statute. *Id.*, *Azar v.

Allina Health Servs.*, 139 S. Ct. 1804, 1815 (2019) ("courts aren't free to rewrite clear statutes

under the banner of our own policy concerns."). Legislative history, like judicial interpretation of

FOIA's plain language, confirms that agencies must now "articulate both the nature of the harm

and the link between the specified harm and specific information contained in the material

withheld." H.R. Rep. No. 114-391, at 9 (2016). The *Vaughn* index does neither.

Harm cannot be established on generalized agency assertions that do not even rise to pre-2016 caselaw and standards. Notably, the non-attorney declarations provide no basis to separate confidential information from "counsel's written responses containing neutral, objective analyses of agency regulations [that] are not privileged." *Hornbeck Offshore Transp., LLC v. United States Coast Guard*, 2006 U.S. Dist. LEXIS 14389, at *47 (D.D.C. Mar. 20, 2006) (internal quotations omitted).  Regulatory analyses during the administrative proceedings are not *per se* privileged under the pre-2016 caselaw. *Id*. at 47-49. The vague proffers do not identify confidential information or identify any harm that could flow from public review of agency counsel's objective analysis of this nation's laws. *Id*. In short, the Response/Reply does not meet the FOIA burden or overcome Plaintiff's showing that Exemption 5 was not established.

There is no specific harm that flows from citizenry knowing what government officials and their attorneys are up to when managing the National Forest, particularly when there is no attempt to meet the pre-2016 waiver standards, and the record creates substantial doubt that the information was jealously guarded, and not shared with third parties. *United States v. Ryans*, 903 F.2d 731, 741 n. 13 (10th Cir.1990).

The Response/Reply relies on the false notion that a *document* must be shared with a non-privileged individual to waive the asserted attorney-client and attorney work product privileges contained within Exemption 5, as amended. ECF No. 58 at ¶74, 102 ("Plaintiff points to no specific instance where a withheld document appeared to have been shared with non-government individuals.").  However, the test is not limited to whether a document was shared outside the agency; the test is whether the agency met its burden to describe confidential information and establish that agency personnel and attorneys have never shared the information with "third parties" not covered by the privilege. *Mead Data Cent., Inc. v. United States Dep't of*

*the Air Force*, 566 F.2d 242, 253 (1977). By applying the wrong standard, the agencies fail to delineate which agency personnel even knows about the privileges and which personnel did or did not diligently protect the privileged information.

In the Tenth Circuit, "the confidentiality of communications covered by the privilege must be jealously guarded by the holder of the privilege lest it be waived," and courts in this Circuit may "grant no greater protection to those who assert the privilege than their own precautions warrant." *Ryans*, 903 F.2d at 741 n. 13. There is no evidence as to the precautions the agency used to protect any information in any withheld agency record. Instead, the responsive FOIA records confirm that attorney communications were casually and routinely forwarded to "a rather broad audience ;)" with no effort to guard that information. Ex. 2 at 3WC_FOIA_073260. The maximum level of protection this court may afford the attorney-related materials can be measured by the attorney's (Kenneth Capps) use of a wink frown emoji ";(" when noting that his update was circulated broadly. *Id*. There is no evidence of anyone taking prompt action to assess and address the broad circulation. *Id.* Winks, like nods, are not evidence of agency compliance, and can establish violations. *United States v. Blagojevich*, 794 F.3d 729, 738 (7th Cir. 2015) (noting that "persons who conspire to rob banks or distribute drugs do not propose or sign contracts in the statutory language. "Nudge, nudge, wink, wink, you know what I mean" can amount to extortion under the Hobbs Act, just as it can furnish the gist of a Monty Python sketch.").

The operative inquiry is whether the agency personnel shared *information* that is otherwise subject to a FOIA Exemption. "When a matter is communicated to the lawyer with the intention or understanding it is to be repeated to another, the content of the statement is not within the privilege." *United States v. Bump*, 605 F.2d 548, 551 (10th Cir. 1979) ("Even if the

privilege exists it is waived when the client voluntarily reveals the information to another or his

attorney does so with his consent.").  Not a scintilla of evidence has been provided to establish

whether or not information contained in any withheld agency record was shared in the extensive

phone and email communications between LMJV and agency staff and attorneys.  The full extent

that the information was provided to LMJV by agency officials, government attorneys, and

subordinate conduits is only known to the agency, and absent discovery or direct judicial

intervention, Plaintiff must rely on redacted information produced in the incomplete FOIA

search to pierce the veil of secrecy. *Burke v. Regalado*, 935 F.3d 960, 1023 (10th Cir. 2019)

*quoting In re Foster*, 188 F.3d 1259, 1264 (10th Cir. 1999) ("A party claiming the attorney-client

privilege must prove its applicability, which is narrowly construed.").  The burden of secrecy is

on the agency, and the agency did not meet the burden to establish the privileges. *Id*.

Even if within the scope of the post-2016 Exemption, the attorney-related privilege can

be waived after agencies "engaged in discussions regarding the NEPA issue." *Hamrick v. GSA,*

U.S. Dist. LEXIS 196307, at *16 (C.D. Ill. Apr. 28, 2015).  Here, the NEPA and federal land

management discussions with third parties, especially LMJV, were far more expansive. *Id*.  The

Vaughn index does not identify legal issues or harms in specific records, relying instead on

general assertions and no identifications of harm. ECF No. 53 at 53.

Alarmingly, one of the central figures who discussed the information with LMJV, Ms.

Gustafson[6], did not conduct a search. ECF Nos. 36-6, 36-16.  This failure to search shields

Plaintiff and this Court from relevant information Ms. Gustafson likely created and obtained and

---

[6]"Defendants admit that Ms. Gustafson, Mr. Mendonca, Mr. Marks, Mr. Brown, Mr. Bedwell,
Mr. Hanna, and Ms. Williamson were not identified as individuals reasonably likely to have
*unique, responsive records and therefore their documents were not searched in connection with
this FOIA request." See* ECF NO 58 at ¶Q (emphasis added).

relayed to LMJV and others in and before 2018. Similarly, the other confirmed central figures (Mr. Ferebee (ECF No. 36-6), Ms. Buchanan (Ex. 2 at 3WC_FOIA_073260, Ex. 3 at WC_FOIA_074287), Ms. Whittington[7] (ECF No. 58-1 at ¶6), Mr. Dallas (ECF No. 36-15), and Mr. Malecek (36-7, 37-8) delegated the task of searching their records to their unnamed administrative assistants. ECF No. 58 at 61. Record evidence establishes that Forest Service personnel, particularly Mr. Malecek, have a history of treating agency records as if their own, thereby evading revelation by assistants or FOIA requesters. ECF No. 37-8. By failing to conduct their own searches, and with no evidence they identified notes, smartphones, extra laptops, or other sources known to the principles, the searches were not designed to identify locations likely to contain agency records relevant to Exemption 5 inquiry.

Walling off the searches to conceal *information* these persons possessed and shared with LMJV, and perhaps others not within the privilege, not only fails to meet the FOIA burden, it warrants entry of findings to establish circumstances that may later support and determine whether to refer this matter for Special Counsel remedy. 5 U.S.C. § 552(f).

Instead of identifying each element required for an agency to assert attorney-related aspects of Exemption 5 or identifying any specific harm from the public knowing what the agency and its attorneys are up to, the *Vaughn* index provides positive, undisputed evidence of specific instances when information was sent back and forth between LMJV and agency personnel that certainly involve calls, documents, text messages, and emails that prevented Exemption 5 from attaching. *See Burke v. Regalado*, 935 F.3d 960, 1023 (10th Cir. 2019). If Exemption 5 did attach, there is no evidence the agencies failed to ensure the protected

---

[7] "Ms. Gustafson retired as Deputy Regional Forester in January 2018 and was replaced by Tammy Whittington." ECF No. 58 at 44.

information was not communicated to LMJV and other third parties, thereby waiving the ability to assert Exemption 5 to withhold agency records. *Id.*

### c.      Exemption 2

The Response/Reply fails to justify Exemption 2 withholdings and fails to explain the harm that would flow from disclosing these documents.  Phone numbers used for official business purposes are not afforded an expectation of privacy. *Sierra Club v. United States EPA*, 2020 U.S. Dist. LEXIS 231770, at *13 (N.D. Cal. Dec. 8, 2020). As outlined in Plaintiff's brief, this information is important to understanding how the agency conducted business, through what means, and to help ensure the proper locations and custodians were searched and all relevant documents were disclosed.

### d.      Exemption 4

The Response/Reply identifies no actual harm, and fails to meet the burdens required to withhold agency records pursuant to Exemption 4.  ECF No. 52 at 40-41.  Importantly, there is no dispute that appraisals, and related documents, were illegally withheld by failing to provide the "heightened standard" to Exemption 4 withholdings. *Ctr. for Investigative Reporting v. United States DOL*, 424 F. Supp. 3d 771, 780 (N.D. Cal. 2019) (ordering production and refusing to provide another opportunity to make required Exemption 4 harm showing).

### e.      Exemption 6

The Response/Reply seeks to withhold government phone numbers and email domains. As Defendants have argued in the D.C. District while seeking to withhold private phone numbers, this information "can be connected to publicly available data to form a "comprehensive picture" of the associated businesses." *Telematch, Inc. v. United States Dep't of Agric.*, 2020 U.S. Dist. LEXIS 223112, at *21 (D.D.C. Nov. 27, 2020).  The same logic applies to the

numbers used by public officials in conducting official business, which Plaintiff seeks to establish a comprehensive picture of the government activities associated with the LMJV proposals. Phone numbers and email domains used by government officials, unlike "Customer Numbers," have no privacy interests. *Id.* The "heightened harm" standard has been applied when declining to claw back agency records containing emails, phone numbers, and other information that could identify individuals. *Sierra Club v. United States EPA*, 2020 U.S. Dist. LEXIS 231770, at *13 (N.D. Cal. Dec. 8, 2020). No attempt was made to link any redaction to a specifically identified harm to any private or agency person.

Plaintiffs' FOIA interest in gaining a comprehensive picture of government operations therefore outweigh Defendants' non-existent privacy interest in the phone numbers and email domains used by government officials. It would defy logic to allow withholding of the very information Plaintiff seeks to piece together a complete picture of the influence LMJV exerted on certain agency officials, who in turn pressed for the result LMJV desired. This is especially important where this Court has repeatedly found agency wrongdoing, in the form of unlawful decisions, undue influence, and bias in the underlying decisionmaking process. *See e.g.* ECF No. 53 at 42-43. This Court's opinions definitively "show that responsible officials acted negligently or otherwise improperly in the performance of their duties" concerning the Village at Wolf Creek proposal, which confirms a compelling public interest in agency records that create a comprehensive picture that may confirm or refute ongoing agency impropriety. *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004) (applying Exemption 7).

### 3.   Failing to Reproduce Agency Records as Searchable PDFs Violates FOIA

The Response/Reply does not dispute that FOIA requires that, "[i]n making any record available to a person under this paragraph, an agency shall provide the record in any form or

format requested by the person if the record is readily reproducible by the agency in that form or format." 5 U.S.C. § 552(a)(3)(B).  Although untold volumes of agency records are readily and routinely produced each year via FOIA, administrative records, and discovery responses as searchable pdfs, the agencies suggest "voluntarily" compliance with this mandatory provision by some undetermined date. ECF No. 58 at 18 (¶86), 25 (¶112), 34.  As a regular FOIA requester, Plaintiff seeks an order that ensures this mandatory provision is applied now, and in the future.

The Reply/Response admits that agency records were not produced in the manner requested, which was searchable pdf. ECF No. 58 at 34-35.  Indeed, there is no denial of the fact that the Supplemental Information Report "was created and maintained in text-searchable form but the version produced in response to the FOIA request was not text-searchable." *Id.* at 7 (¶26). Indeed, "Defendant admits that nearly all of the initial rolling productions were at least partially text searchable." *Id*. at 17 (¶86).  There is no dispute that withheld agency records - released on September 10, 2020 after unspecified and unlawful redactions were removed in conjunction with the Summary Judgment deadline - were not produced as searchable pdfs.

The agency explanations are simply not credible, and contradict regular agency (and judicial) practice that requires searchable pdf copies because most documents are readily reproducible in that format. District of Colorado ECF Civil Procedures v. 6.1 (I.)(1.3)(f) ("Documents converted electronically shall be text-searchable."). The contrived explanations for converting electronic records to unsearchable pdfs points to procedures and software used by its contractor that runs contrary to the agencies' regular filing of searchable pdf copies of agency records, particularly Administrative Records, with this Court. ECF No. 58 at 24. Notably, the AR filed in the related litigation contains many volumes of FOIA documents, all of which were provided as searchable pdfs. *RMW v. Dallas*, 15-cv-01342-JLK at ECF No. 19 (conventionally

filed AR), 19-cv-01512-CMA at ECF No. 26 *et seq*. (full administrative record ECF-filed). Even if the agencies and their chosen contractor could credibly establish that they lack this basic technology, it runs afoul of the FOIA requirement that "[e]ach agency shall make reasonable efforts to maintain its records in forms or formats that are reproducible for purposes of this section." 5 USCS § 552(a)(3)(B). There is no evidence the records are not readily reproduceable as searchable pdfs. No deference is due bare allegations that contradict the Courts own knowledge of document production in FOIA, administrative records and e-discovery contexts.

The agency also seeks to shunt the agency's formatting duties onto Plaintiff. ECF No. 58 at 25. There is no reason to believe that the unidentified contractor allegedly "specializing in litigation consulting and electronic discovery" lacks the capability to readily reproduce agency records as searchable pdfs. ECF No. 58-1 at ¶26.  It is reasonable to infer that cross-examining the unidentified contractor would establish that agency records are "readily reproducible" as searchable pdfs, particularly if the agency made Plaintiff's requested format known to the contractor from the outset. 5 U.S.C. § 552(a)(3)(B).

The Response/Reply does not acknowledge nor meet the legal duties FOIA imposes on the agency, and a judicial order is the proper means to ensure FOIA compliance. *Id*. These circumstances also warrant entry of findings for consideration during post-judgment Special Council proceedings. 5 U.S.C. § 552 (f).

**CONCLUSION**

Plaintiff's Cross-Motion, though argument contained in its Response/Reply, establishes that Defendants' search for records was unreasonable, its withholdings were unlawful, and it violated the FOIA.  Summary judgment is properly entered for Plaintiff.

RESPECTFULLY SUBMITTED December 28, 2020:

*s/ Travis Stills*
**Travis E. Stills**
Energy & Conservation Law
1911 Main Ave., Suite 238
Durango, Colorado 81301
(970) 375-9231
stills@frontier.net
*Attorneys for Plaintiff*

**Matthew Sandler**
Rocky Mountain Wild
1536 Wynkoop St. Suite 900
Denver, CO 80202
303-579-5162
Matt@rockymountainwild.org

## CERTIFICATE OF SERVICE

I hereby certify that on December 28, 2020 I served a copy of this motion an all parties using the

CM/ECF system, unless otherwise noted below.

*s/ Travis Stills*
**Travis E. Stills**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 11, 2022 I filed this Appendix using the Tenth Circuit's ECF system for filing and transmittal of a Notice of Electronic Filing.

## <u>CERTIFICATE OF COMPLIANCE RE: PRIVACY REDACTIONS,<br>VIRUSES AND ORIGINAL</u>

I hereby certify that all privacy redactions have been made, paper copies filed are exact copies of the version submitted electronically, and this Appendix has been scanned for viruses with the most recent version of a commercial virus scanning program, and is free of viruses.

Dated: February 11, 2022          */s/ Travis E. Stills*
Travis E. Stills
Energy & Conservation Law
227 E.14th St, #201
Durango, Colorado 81301
(970) 375-9231
stills@eclawoffice.org

Matthew Sandler
Rocky Mountain Wild
1536 Wynkoop St. Suite 900
Denver, CO 80202
303-579-5162
Matt@rockymountainwild.org

*Attorneys for Appellant Rocky Mountain
Wild*
          */s/ Travis E. Stills*
          Travis E. Stills