FILED
**United States Court of Appeals**
**Tenth Circuit**

**December 30, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ROCKY MOUNTAIN WILD, INC.,

      Plaintiff - Appellant,

v.

UNITED STATES FOREST SERVICE;
UNITED STATES DEPARTMENT OF
AGRICULTURE,

      Defendants - Appellees.

No. 21-1169

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:18-CV-03065-MEH)**
_____

Travis E. Stills, Energy and Conservation Law, Durango, Colorado, (Matthew Sandler, Rocky Mountain Wild, Denver, Colorado, with him on the briefs) for Plaintiff-Appellant.

Marissa R. Miller, Assistant United States Attorney (Cole Finegan, United States Attorney, with her on the brief), Denver, Colorado, for Defendants-Appellees.
_____

Before **TYMKOVICH**, **EID**, and **CARSON**, Circuit Judges.
_____

**CARSON**, Circuit Judge.
_____

The Freedom of Information Act (FOIA) makes government records accessible to the public, including organizations like Plaintiff Rocky Mountain Wild. But this access is not limitless. The statute instructs government agencies to use reasonable—

not the utmost—efforts to produce responsive records upon request.  Beyond that,

FOIA also exempts nine categories of records from public disclosure.

Plaintiff requested and received voluminous records under FOIA, but now

asserts Defendants United States Forest Service ("USFS") and United States

Department of Agriculture ("USDA") abused these statutory limitations to hide

information about projects that harm the environment.  The district court rejected

Plaintiff's speculative theory and found USFS's efforts to comply with Plaintiff's

FOIA request reasonable.[1]  Our jurisdiction arises under 28 U.S.C. § 1291.  We

affirm.

I.

For years the parties have litigated the propriety of a proposed development in

the Wolf Creek Ski Area—which the USFS manages.  The proposed development is a

plan for highway access known as "the Village at Wolf Creek Access Project."

Plaintiff challenges this plan because of alleged environmental risks to the

surrounding national forest.  The highway-access litigation continues, but relevant

here is a 2018 FOIA request Plaintiff submitted asking Defendant for "all agency

records regarding the proposed Village at Wolf Creek Access Project."

Plaintiff's request caused an enormous undertaking by Defendant.  The request

sought "all agency records" about the project.  The breadth of the request first

---

[1] Although Plaintiff sued both the Forest Service and the Department of
Agriculture, the Forest Service plays the most prominent role in this dispute.  So for
efficiency, we use "Defendant" or "USFS" to refer to the Forest Service.

required Defendant to determine the relevant period during which its employees would have created responsive documents so it could direct those employees to search their files within that timeframe. Then Defendant also narrowed the request's scope to include only documents Defendant had not already given Plaintiff, documents Defendant had not made public, and documents not statutorily exempt from disclosure.

Defendant next had to find employees who might possess responsive records. Defendant determined that twenty-seven employees were substantially involved in the Village at Wolf Creek Access Project during the relevant timeframe and likely possessed responsive records. All but two of those employees worked in Colorado. Defendant allowed the employees to search their own files using custom search terms, reasoning that each employee would know the best search terms to find responsive documents. The employees reported how they searched their files and listed their individual search terms. Between the twenty-seven employees, they searched their files with more than two dozen different search terms, including variations of similar terms. Some of the twenty-seven employees handed off the search to their administrative assistants but still specified the search terms their administrative assistants used. Those who searched looked in different locations, such as physical hard-copy files, external and internal computer hard drives, and emails, including attachments, within their archive system. Finally, most employees searched twice for documents, and all the selected employees searched for responsive records after March 1, 2019, to make sure none showed up at the last minute.

After collecting documents from the twenty-seven employees, a team of five Forest Service officials worked full-time for months to review the produced documents.[2]  The team organized documents into three groups: (1) nonresponsive, which they removed; (2) responsive but either produced before from a past FOIA request, outside the window Defendant calculated, or exempt under FOIA, which they also removed but listed the exempt documents in an index; and (3) responsive and not previously produced, outside the timeframe, or exempt under FOIA, which they gave to Plaintiff.  As the team compiled disclosable responsive documents, it sent groups of them to Plaintiff in "rolling productions."

Over the course of a year, Defendant organized twenty-seven rolling productions to Plaintiff after identifying 140,637 responsive pages in 14,740 records. Defendant tried to produce these documents in a way Plaintiff preferred, such as reproducing documents as individual PDF files and reproducing those documents a third time as searchable PDFs once Plaintiff objected to the non-searchable format. At Plaintiff's insistence, Defendant also created an almost 800-page "Vaughn index" to inventory the thousands of agency records FOIA exempted from disclosure (7,757 in total).  See Vaughn v. Rosen, 484 F.2d 820, 827 (D.C. Cir. 1973) (establishing that an agency can list exempt documents in an index to allow a court to consider the agency's justifications for exempting them more easily).  Defendant even hired an outside contractor to help prepare the Vaughn index because so many privilege issues

---

[2] Other Forest Service employees helped part-time.

came into play and Defendant wanted to make sure it had properly withheld or redacted documents.  Defendant submitted declarations detailing its months-long search effort.

While Defendant gathered responsive documents to include in the rolling productions, Plaintiff sued Defendant in federal court for allegedly missing statutory deadlines, conducting an inadequate search, and improperly withholding or redacting documents.  During the litigation, Defendant started producing documents to Plaintiff.  In one production, Defendant mistakenly included two documents not properly redacted and asked Plaintiff to return or destroy the documents and provided Plaintiff with properly redacted replacements.  But Plaintiff refused.  So Defendant moved the district court to order Plaintiff to return or destroy the documents.  The court granted Defendant's motion, directing Plaintiff to remove the documents from any online locations (another organization had posted the documents on its Facebook page) and return or destroy them.

Later, the parties each moved for summary judgment.  Defendant argued that its declarations describe how its employees reasonably searched for responsive documents and prove that the agency reasonably applied FOIA exemptions to redact parts of or withhold entire records.  Plaintiff countered that Defendant had not proven it conducted a FOIA-compliant search or met the standard to exempt documents in whole or in part from production.  The district court granted Defendant's summary-judgment motion.  It found that Defendant reasonably searched for records to comply with the FOIA request and adequately justified why it redacted or withheld certain

5

records.  Plaintiff appeals the summary-judgment decision and the order to return the improperly redacted documents.

## II.

We review a grant of summary judgment in FOIA cases de novo if the district court's decision "had an adequate factual basis." Jordan v. U.S. Dep't of Just., 668 F.3d 1188, 1192 (10th Cir. 2011) (quoting Audubon Soc'y v. U.S. Forest Serv., 104 F.3d 1201, 1203 (10th Cir. 1997).  The government can develop an adequate factual basis by providing a Vaughn index, which an agency typically puts together to allow the court to review the agency's nondisclosures.  See Anderson v. Dep't of Health & Hum. Servs., 907 F.2d 936, 942 (10th Cir. 1990). The agency bears the burden of justifying its nondisclosures.  Friends of Animals, 15 F.4th 1254, 1260 (10th Cir. 2021) (citing Herrick v. Garvey, 298 F.3d 1184, 1190 (10th Cir. 2002).

A court should grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A mere scintilla of evidence supporting the nonmovant's position will not create a genuine issue of material fact; the fact issue must make it so that a reasonable jury could find for the nonmovant.  Herrick, 298 F.3d at 1190.  Because the district court granted summary judgment in Defendant's favor, "we review the record and all reasonable inferences . . . drawn therefrom in the light most favorable to [Plaintiff]."  See Trentadue v. Integrity Comm., 501 F.3d 1215, 1226 (10th Cir. 2007) ["Trentadue I"].

III.

Plaintiff challenges the district court's decision on four grounds. First, Plaintiff claims the court applied the standard of review incorrectly by improperly deferring to Defendant's declarations. Second, Plaintiff argues that the court wrongly found that Defendant conducted a reasonable search for records. Third, Plaintiff asserts that the court erred in determining that Defendant validly withheld or redacted documents under certain FOIA exemptions. And last, Plaintiff appeals the district court's order allowing Defendant to claw back inadvertent disclosures USFS made during one of its rolling productions to Plaintiff.

Congress enacted FOIA to facilitate public access to federal agency records and information. Friends of Animals, 15 F.4th at 1260 (citing NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 221 (1978)). The statute favors disclosure. NLRB, 437 U.S. at 220. But it also exempts nine categories of records from disclosure for confidentiality and privacy reasons. Id. at 220–21; 5 U.S.C. § 552(b). With this statutory framework in mind, we address Plaintiff's assertions.[3]

---

[3] We also grant Plaintiff's motion to file a supplemental appendix. Plaintiff failed to include all the relevant docket entries when it first filed its appendix like the Federal Rules of Appellate Procedure and our local rules require. See Lincoln v. BNSF Ry. Co., 900 F.3d 1166, 1189 (10th Cir. 2018) (citing Fed. R. App. P. 30 (a)(1); 10th Cir. R. 10.3(A)). While an appellant who produces an inadequate appendix "does so at his peril," Dikeman v. Nat'l Educators, Inc., 81 F.3d 949, 955 (10th Cir. 1996) (citation omitted), we see no reason not to allow the supplement because it results in no prejudice to either party. See infra at 23–24.

A.

"In any FOIA action challenging an agency decision to withhold records, the district court reviews de novo the agency's decision not to disclose." See Herrick, 298 F.3d at 1189.  Although Plaintiff recognizes that the district court stated the correct standard, Plaintiff asserts that the court improperly deferred to Defendant's declarations and failed to conduct a true de novo review.  Plaintiff claims the district court applied a "bad faith standard to shield litigation declarations from scrutiny." This standard, according to Plaintiff, required Plaintiff to show the agency's bad faith to disprove the declarations' contents instead of the court analyzing the declarations' veracity.

The district court applied no such standard.  Rather, it applied a good-faith presumption to the declarations as our precedent directs.  See Trentadue v. F.B.I., 572 F.3d 794, 808 (10th Cir. 2009) ["Trentadue II"] (quoting SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).  This presumption "essentially requires us to credit the agency's sworn statements" absent contrary evidence.  Stevens v. U.S. Dep't of State, 20 F.4th 337, 342–43 (7th Cir. 2021).  In Trentadue II, we adopted the D.C. Circuit's rule that courts should give agency declarations a presumption of good faith that a FOIA plaintiff cannot rebut by merely speculating about the possibility of other documents somewhere.  572 F.3d at 808.

The district court correctly presumed, then, that Defendant submitted its declarations in good faith because "declarations and affidavits are the widely accepted, even preferable, means for an agency to respond to concerns about the

8

adequacy of a FOIA search." Id. at 807. And although the court discussed bad faith, it did so only to address Plaintiff's numerous accusations of Defendant's supposed bad faith. The court rejected those accusations because Plaintiff could not cite supporting caselaw or provide examples of Defendant's bad faith. Simply put, as Plaintiff recognizes, without contrary evidence or proof of inconsistencies, Defendant's detailed declarations comply with FOIA. See id. at 807 (quoting Rugiero v. U.S. Dep't of Just., 257 F.3d 534, 547 (6th Cir. 2001)).

Thus, Plaintiff needed to present specific, nonspeculative, countervailing evidence or evidence of inconsistencies to rebut the good-faith presumption. As discussed more below, Plaintiff failed to do so. Meanwhile, the district court appropriately discussed why it applied the presumption of good faith to Defendant's declarations and then explained why it rejected each of Plaintiff's arguments about supposed countervailing evidence of Defendant's bad faith. The district court even considered the sufficiency of the agency's declarations even though Plaintiff did not challenge their sufficiency. We thus reject Plaintiff's argument that the court failed to conduct de novo review merely because it presumed Defendant presented its declarations in good faith.

## B.

Next, Plaintiff argues that the district court erred by concluding Defendant engaged in reasonable search efforts. We agree with the district court that Defendant put forth reasonable efforts to comply with Plaintiff's FOIA request.

FOIA does not specify how hard an agency must look for requested records. Trentadue II, 572 F.3d at 797.  But we have joined other circuits that have adopted the "reasonableness rule."  Id. (listing circuits).  The rule requires agencies to show that they reasonably tried to produce responsive records.  Id. (citing 5 U.S.C. § 552(a)(3)(C)).  Their search must be "reasonable in scope and intensity" and need not turn up "every nonexempt requested document regardless of the cost of locating it."  Id.  That is why we focus on the agency's search process, not the outcome.  Id.  To that end, the "issue is *not* whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate." Id. (alteration in original) (quoting Weisberg v. U.S. Dep't of Just., 705 F.2d 1344, 1351 (D.C. Cir. 1983)).  The reasonableness inquiry focuses on the probability that the search will discover responsive documents, the availability of other search methods, and the feasibility of those alternative methods.  See id. at 798 (quoting Davis v. Dep't of Just., 460 F.3d 92, 105 (D.C. Cir. 2006)).  We also consider the case's circumstances when analyzing the search.  Id. at 797 (citing Weisberg, 705 F.2d at 1351).

Plaintiff accuses the agency of not using effective search terms, excluding employees likely to have responsive records, avoiding searching the agency's Washington D.C. offices, and ignoring devices likely to have responsive records. Plaintiff insists that the district court "uncritically accept[ed]" Defendant's declarations to find the search reasonable despite these alleged failures.  But courts generally resolve FOIA cases on summary judgment based on affidavits or

declarations.  See World Publ'g Co. v. U.S. Dep't of Just., 672 F.3d 825, 832 (10th

Cir. 2012) (first citing Trentadue II, 572 F.3d at 807–08; then Wood v. F.B.I., 432

F.3d 78, 85 (2d Cir. 2005)).  Not to mention, we prefer that agencies use declarations

or affidavits to ease concerns about a FOIA search's adequacy.  Trentadue II, 572

F.3d at 807.  And we apply a presumption of good faith to an agency's affidavits or

declarations, which Plaintiff cannot rebut by merely speculating about the existence

of other documents.  Id. at 808 (citing SafeCard, 926 F.2d at 1200).

Indeed, we routinely rely on declarations to make sure an agency fulfilled its

FOIA duties.  For example, in Trentadue II, we thought that the F.B.I.'s searches

were "very thorough."  572 F.3d at 807.  The F.B.I. attested in declarations that it had

searched its indices, manually searched two files, and indexed the entire principal file

about the event at issue.  Id.  The only task the F.B.I. did not do would have required

manually searching through one million pages of the principal file, which would take

"thousands of hours of work"—an effort we described as "unreasonably

burdensome."  Id.  Because the F.B.I.'s declarations "provide[d] an internally

consistent and uncontradicted record" of its search efforts, we determined that the

plaintiff could not justify the additional discovery he requested.  Id. at 808.  Thus,

like the plaintiff in Trentadue II, Plaintiff must come forward with "countervailing

evidence or apparent inconsistency of proof" to rebut the good-faith presumption for

Defendant's detailed declarations.  See id. at 807 (quoting Rugiero, 257 F.3d at 547).

Otherwise, the court has no reason not to believe the agency's sworn statements.

11

Plaintiff asserts that the agency did not use effective search terms, excluded from its search employees likely to have responsive records, avoided searching the agency's Washington D.C. offices, and ignored devices likely to have responsive records. These failures, Plaintiff complains, caused the agency's search to violate its duties under FOIA. We disagree.

The agency allowed its employees to come up with their own search terms while looking for documents about the project. In Plaintiff's view, this led to inconsistent search results that likely left out responsive records. The Seventh Circuit recently rejected a similar attack on a State Department document search. See Stevens, 20 F.4th at 343. There, a FOIA plaintiff objected to the State Department allowing its officers to decide what to search based on their familiarity with the Department's way of keeping records. Id. The court determined that the Department sufficiently detailed its account of search methods and found the methods reasonable. Id. at 343–44; see also Inter-Coop. Exch. v. U.S. Dep't of Com., 36 F.4th 905, 911 (9th Cir. 2022) (recognizing the discretion that agencies enjoy in crafting search terms designed to identify responsive records because they know best how they keep their own files and what vocabulary they use for certain projects).

We reach the same conclusion here. Defendant's decision to allow its employees to customize the terms they employed to search their own records is not inherently unreasonable, especially given that Defendant listed the terms each employee used. And that list included more than two dozen search terms with

different variations of similar terms.  Cf. Inter-Coop. Exch., 36 F.4th at 911–12 (finding an agency's choice to use just two search terms insufficient because those terms could not have found responsive records to both requests the plaintiff submitted, did not adequately reflect the breadth of the requests, and did not include variant terms).  Although Defendant did not use precisely the terms Plaintiff would have used to look for the same information, Plaintiff presents no reasoned authority demonstrating the unreasonableness of Defendant's search terms.  We therefore reject Plaintiff's argument to the extent that it rests on Defendant's allegedly unreasonable search terms.

Plaintiff further alleges that Defendant purposefully excluded other employees likely to have responsive records.  According to Plaintiff, the district court improperly deferred to Defendant's identification of which employees may have responsive records.  Defendant attested in its declarations that it chose employees based on who created documents about the project or whether relevant documents were routed through those employees.  Plaintiff argues that the district court ignored the possibility that Defendant may have omitted other employees, but Plaintiff does not identify who Defendant overlooked.

Plaintiff asserts that any person listed on the Vaughn index should have searched their files as well.  Plaintiff directs us to three individuals who allegedly possess responsive documents but did not search for them.  The first two people Plaintiff names no longer work for the agency, but the employees who took over their positions did search their records to comply with the FOIA request.  So that leaves

13

one person—the District Ranger on the Divide District of the Rio Grande National Forest—who Plaintiff identifies as possibly possessing responsive records that Defendant could have included in its search. Defendant did not ask this employee to search her files because she has worked so little on the project that Defendant did not expect her to have responsive records. Plus, Defendant says, any responsive records she may possess would come up in other employees' searches who were more substantially involved in the project.

Plaintiff insists that leaving out any employees who potentially have responsive documents frustrates "a FOIA search designed to find all agency records." But Plaintiff misunderstands the standard—a FOIA search need not locate every conceivable responsive record no matter the cost. See Trentadue II, 572 F.3d at 797. Plaintiff identifies only persons whose files contain documents duplicative of those searched for by other employees. Defendant's choice to exclude those persons was not unreasonable.

Plaintiff also objects to the employees who recruited their assistants to search their records for them. Plaintiff reasons that if each employee supposedly knew their own records well enough to come up with their own search terms, then they should have searched the files themselves. But Plaintiff offers no evidence that the employees' assistants did not know the best way to find responsive records. Nor does Plaintiff claim that the assistants used deficient search terms. Instead, Plaintiff implicitly speculates that the employees themselves would have used different terms if they had personally searched their files. Plaintiff's lack of evidence showing the

14

inadequacy of having an assistant search files for responsive documents dooms its argument.

Plaintiff also appears to object—on a numerical basis—to Defendant's decision to involve twenty-seven (and not more) employees to conduct the search. These conclusory assertions do not rebut the good-faith presumption we apply to Defendant's declarations explaining why it did not include more employees in the search. See Trentadue II, 572 F.3d at 808.

Next, Plaintiff contends that the agency might have found additional responsive records in its Washington, D.C. offices had it only required more employees to search their documents. But Defendant's declarations explain that although it considered employees across offices, most employees it identified as likely to have responsive records worked in Colorado because the project involves federal land in that state. Plaintiff responds by pointing out that Defendant's Vaughn index proves that the D.C. offices contain responsive records. True enough. But even if there are responsive documents in Washington D.C., there is no evidence in the record before us that they are not duplicative or otherwise exempt from production. And even if there are more documents in Washington D.C., their mere existence does not mean that Defendant's search was unreasonable.

Finally, Plaintiff objects to Defendant's choice of which devices to search and where to search on those devices. Plaintiff apparently expected the employees to describe where they searched, whether they searched the entirety of each document or device, and how they made sure they searched every possible responsive document

15

they possessed.  This goes far beyond the reasonableness standard; FOIA searches need only be "reasonable in scope and intensity."  See Trentadue II, 572 F.3d at 797. The record in this case demonstrates a herculean effort by Defendant to comply with Plaintiff's requests.  Defendant deployed a team of employees who worked full-time for months locating and reviewing responsive records; produced 14,740 documents totaling 140,637 pages from the personal files of twenty-seven identified custodians; and hired an electronic discovery specialist to provide Plaintiff an 800-page Vaughn index containing nearly 8,000 individual entries.  To hold that such an effort was unreasonable could result in such a burden on agencies that they could not both comply with FOIA and complete the core functions of their jobs.

As part of its final point, Plaintiff objects to the employees not searching their work cellphones, which Plaintiff says might contain responsive text messages, notes, or records in other email accounts.  This complaint misses the mark for a few reasons.  For one, not every Forest Service employee uses a work cellphone.  And those that do have a work cellphone sync the phone's email account with their work computer's email account, meaning any computer search would have caught responsive emails on employees' phones.  For another, Plaintiff does not pinpoint any responsive documents that the phones possess.  Rather, Plaintiff speculates that the phones contain "potentially responsive" records.  This speculation fails in the face of Defendant's declarations explaining that Defendant entrusted its employees to decide where to search because they know best where responsive records might be located, and that they did not search their cellphones because they did not expect

16

their phones to have any responsive records that a computer search would not have already found.  Because Plaintiff does not rebut this explanation with concrete evidence to the contrary, we presume Defendant trusted its employees in good faith. See Trentadue II, 572 F.3d at 808.  And without countervailing evidence suggesting that employees worked on the project using personal text messaging or other email accounts, we similarly presume the employees chose not to search their text messages and personal email accounts in good faith.  Id. at 808.  So considering all the places the employees did search, their good-faith decision to not include personal text messages and email accounts in their search does not render Defendant's search unreasonable, either.

Ultimately, Plaintiff's arguments rely on speculation.  While Plaintiff remains unsatisfied, it offered no evidence to show what additional documents other employees or offices possibly possessed.  At the same time, Defendant's declarations describe a thorough investigation for employees who might have responsive records, detailed lists of how each employee searched their own records, and explanations of how the team who received those records separated them out to respond to the FOIA request.  Based on Defendant's declarations and Plaintiff's failure to rebut them, we agree with the district court that Defendant performed an adequate search.  Again, we focus not on whether "any further documents might conceivably exist," but whether the government adequately searched for responsive documents.  Trentadue II, 572 F.3d at 797.  At bottom, Plaintiff failed to produce evidence sufficient to create a

genuine issue for trial on whether the agency reasonably tried to produce responsive documents, making summary judgment on this issue proper.

## C.

Plaintiff also challenges the district court's determination that Defendant properly withheld or redacted documents under certain FOIA exemptions.  Plaintiff first protests Defendant's decision to hire an outside contractor to help prepare the Vaughn index.  But Plaintiff did not dispute Defendant's outside contractor below, forfeiting the issue.  See Richison v. Ernest Grp., 634 F.3d 1123, 1128 (10th Cir. 2011) (explaining that "if the theory simply wasn't raised before the district court, we usually hold it forfeited"); Appellant's App. Vol. I at 208–54.  And Plaintiff does not argue on appeal that the district court committed plain error.  We thus do not consider the issue because Plaintiff waived it by not arguing for plain-error review after forfeiting it.  See Richison, 634 F.3d at 1128, 1131 (citing McKissick v. Yuen, 618 F.3d 1177, 1189 (10th Cir. 2010) (clarifying that a party *waives* plain-error review of a *forfeited* argument by failing to explain how the forfeited argument survives plain-error review)).

Plaintiff waived the issue about Defendant preparing an insufficient Vaughn index as well.  Unlike Plaintiff's outside-contractor argument, which it forfeited at the district court, Plaintiff did contest the index entries below.  But to preserve issues for appeal, a party must draft arguments that go beyond general claims of error, Garrett v. Selby Connor Maddux & Janer, 425 F.3d 836, 841 (10th Cir. 2005), and include the "contentions and reasons for them, *with citations to the authorities and*

18

*parts of the record on which the appellant relies*." Fed. R. App. P. 28(a)(8)(a) (emphasis added).

Despite this standard, Plaintiff argues only generally that Defendant created an insufficient <u>Vaughn</u> index. Plaintiff does not name even one specific entry where Defendant failed to include the necessary information to justify applying a FOIA exemption. Still, Plaintiff argues it sufficiently briefed the issue by objecting below to groups of entries that lacked information and then citing those objections in its appellate briefs. These objections also do not identify individual entries; Plaintiff merely groups allegedly deficient entries into categories with hundreds of entries in each.

But "[j]udges are not like pigs, hunting for truffles buried in briefs." <u>Gross v. Burggraf Const. Co.</u>, 53 F.3d 1531, 1546 (10th Cir. 1995) (quoting <u>United States v. Dunkel</u>, 927 F.2d 955, 956 (7th Cir. 1991)). "[A]ppellants, rather than courts of appeals, [must] ferret out and articulate the record evidence considered material to each legal theory advanced on appeal." <u>Conto v. Concord Hosp., Inc.</u>, 265 F.3d 79, 81–82 (1st Cir. 2001). So without a specific reference to the purportedly insufficient entries, we will not scour the record to determine whether evidence exists that might require the case to go to a jury. <u>Gross</u>, 53 F.3d at 1546 (quoting <u>Thomas v. Wichita Coca-Cola Bottling Co.</u>, 968 F.2d 1022, 1025 (10th Cir. 1992)).

Plaintiff claims Defendant's <u>Vaughn</u> index contains 4,110 deficient entries. Plaintiff apparently invites us to comb through the entire index to see if we agree. We decline the invitation. If Plaintiff wanted to challenge the index's sufficiency,

Plaintiff needed to specifically reference the problematic entries and explain what makes them insufficient.[4]  Its failure to do so means Plaintiff waived this issue.  <u>See Garrett</u>, 425 F.3d at 841 (quoting <u>Utahns for Better Transp. v. U.S. Dep't of Transp.</u>, 305 F.3d 1152, 1175 (10th Cir. 2002) (noting that a party waives issues inadequately briefed).

Plaintiff also quarrels with the district court's exemption analysis.  FOIA requires agencies to hand over any requested agency records unless an exemption listed in 5 U.S.C. § 552(b) prevents their disclosure.  <u>Prison Legal News v. Exec. Off. for U.S. Att'ys</u>, 628 F.3d 1243, 1251 (10th Cir. 2011) (citing <u>U.S. Dep't of Just. v. Tax Analysts</u>, 492 U.S. 136, 150–51 (1989)).  So as we consider Defendant's justifications for invoking exemptions, we keep in mind that we must construe FOIA broadly and apply any exemptions narrowly.  <u>Trentadue I</u>, 501 F.3d at 1226.  Indeed, "the required balance is not an even one.  Because FOIA's core purpose is to shed light on the government's performance of its duties," we broadly construe the statute to favor disclosure.  <u>Friends of Animals</u>, 15 F.4th at 1267.  So we start with a "presumption of disclosure."  <u>Id.</u>  At the same time, "we recognize that the FOIA exemptions serve important interests."  <u>Id.</u> at 1261 (citing <u>John Doe Agency v. John Doe Corp.</u>, 493 U.S. 146, 152 (1989)).

---

[4] Plaintiff did not specify which entries are allegedly deficient in the proceedings below, either.  The district court randomly spot-checked some entries and found them "reasonably clear, specific, and detailed."

Although Defendant invoked many FOIA exemptions, Plaintiff challenges only Exemption 5's application on appeal. This exemption "excuses disclosure of 'inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.'" Trentadue I, 501 F.3d at 1226 (quoting 5 U.S.C. § 552(b)(5)). Put differently, Exemption 5 protects documents a privilege would cover in a civil proceeding involving an agency. Id.; see also F.T.C. v. Grolier Inc., 462 U.S. 19, 26–27 (1983) ("Exemption 5 incorporates the privileges which the Government enjoys under the relevant statutory and case law in the pretrial discovery context.") (emphasis omitted) (quoting Renegotiation Bd. v. Grumman Aircraft Eng'g Corp., 421 U.S. 168, 184 (1975)).

A court can look to, among other things, detailed affidavits for the factual basis necessary to decide whether the agency sufficiently justified withholding or redacting records. See Anderson, 907 F.2d at 942. As long as the affidavits reasonably specify how the documents fall within the exemption, the agency satisfies its burden under FOIA. Hull v. I.R.S., U.S. Dep't of Treasury, 656 F.3d 1174, 1177 (10th Cir. 2011) (quoting Quiñon v. F.B.I., 86 F.3d 1222, 1227 (D.C. Cir. 1996)). But affidavits that "merely parrot" the statute's language or supply conclusions without explanation do not suffice. Anderson, 907 F.2d at 942 (quoting Carter v. U.S. Dep't of Com., 830 F.2d 388, 393 (D.C. Cir. 1987)).

Plaintiff challenges Defendant's invocation of Exemption 5 on two grounds. First, Plaintiff argues Defendant never specified the harm it would suffer if it had to

disclose each exempt entry like FOIA requires. Second, it asserts that Defendant did not prove the attorney-client privilege or the work-product doctrine applied to each entry in the index under this exemption.

Plaintiff also waived its second theory, but for a different reason than the first two waived issues. Plaintiff did not include all the relevant docket entries in its appendix like the Federal Rules of Appellate Procedure and our local rules require. See Lincoln v. BNSF Ry. Co., 900 F.3d 1166, 1189 (10th Cir. 2018) (first citing Fed. R. App. P. 30 (a)(1); then 10th Cir. R. 10.3(A)). So it tried to add a third volume to its appendix when filing its reply brief. This third volume contained one document: Plaintiff's reply to the cross-motion for summary judgment in the district court. Plaintiff needed this reply to disprove Defendant's allegation that Plaintiff waived any challenge to the elements of the attorney-client privilege or the work-product doctrine by not mentioning this issue below or arguing for plain-error review in its opening brief. Turns out, Plaintiff did brief this issue below, but just in a reply. So the district court did not consider the issue, likely because Plaintiff raised it for the first time in a reply. See Appellant's App. Vol. II at 364 ("Plaintiff does not specifically challenge the withholdings under any particular theory of exemption; in other words, Plaintiff does not argue that Defendant has failed to demonstrate a particular element of the attorney-client privilege, for example."). After all, reply briefs "do not provide the moving party with a new opportunity to present yet another issue for the court's consideration." Home Design Servs., Inc. v. B & B Custom

Homes, LLC, 509 F. Supp. 2d 968, 971 (D. Colo. 2007) (quoting Pacific Gas and
Elec. Co. v. U.S., 69 Fed. Cl. 784, 817 (Fed. Cl. 2006).

 So Plaintiff asks us to consider an issue (1) asserted once in a reply brief
below (2) that the district court did not consider, yet (3) not challenged for plain error
on appeal, let alone (4) in its original appendix.  These failures "surely mark[ ] the
end of the road for an argument for reversal not first presented to the district court."
Richison, 634 F.3d at 1131; see also Singleton v. Wulff, 428 U.S. 106, 120 (1976)
("It is the general rule, of course, that a federal appellate court does not consider an
issue not passed upon below.").

Plaintiff's remaining argument—that Defendant insufficiently justified its
exemptions by failing to prove harm for each entry in the Vaughn index—fails, too.
Congress amended FOIA in 2016 to allow an agency to withhold information only if
the agency "reasonably foresees that disclosure would harm an interest protected by
an exemption."  5 U.S.C § 552(a)(8)(A)(i).  The D.C. Circuit has interpreted this
amendment to impose a duty on agencies to show not only that an exemption applies,
but also how disclosure would harm the interest sought to be protected by that
exemption, at least in the context of withholdings based on the deliberative-process
privilege.  See Reps. Comm. for Freedom of the Press v. F.B.I., 3 F.4th 350, 369–70
(D.C. Cir. 2021).

Plaintiff insists that Defendant could not invoke Exemption 5 without also
explaining how disclosure would harm the agency.  We have yet to decide whether
§ 552(a)(8)(A)(i) requires agencies to show not just that an exemption applies but

also how sharing the information would harm the interest protected by that exemption.  But we need not do so here.  Like the district court determined, even if that heightened burden applies, Defendant made the required showing of harm.  Defendant asserted that it applied Exemption 5 to withhold or redact documents covered by the attorney-client privilege, the work-product doctrine, and the confidential-information privilege.

The reasons for protecting attorney communications are long-established.  See Swidler & Berlin v. United States, 524 U.S. 399, 403 (1998) (first citing Upjohn Co. v. United States, 449 U.S. 383, 389 (1981); then Hunt v. Blackburn, 128 U.S. 464, 470 (1888)) ("The attorney-client privilege is one of the oldest recognized privileges for confidential communications."); see also Hickman v. Taylor, 329 U.S. 495, 510 (1947) (recognizing the work product doctrine).  Defendant attested in declarations that documents withheld or redacted under Exemption 5 mainly involved attorney-client communications.  The declarations detail the kinds of documents involved, including drafts of legal documents, and explain why disclosure of that information would harm Defendant.  It should surprise no one that Defendant and Plaintiff, who have been litigating the Village at Wolf Creek Access Project for years, have privileged materials related to this dispute.  And Defendant would suffer harm if Plaintiff got its hands on those documents.  The attorney-client privilege and work-product doctrine prevent that harm.  For this reason, Congress created Exemption 5. See Hunton v. U.S. Dep't of Just., 590 F.3d 272, 278–79 (4th Cir. 2010) (explaining that Congress drafted Exemption 5 to prevent private parties from using the FOIA to

deprive the government of the work-product and attorney-client protections otherwise available to it in litigation).  So Defendant's declarations sufficiently show that the agency would suffer harm from disclosing documents protected by either the privilege or the doctrine.  See, e.g., F.T.C., 462 U.S. at 23 (recognizing that "Congress had the attorney's work-product privilege specifically in mind when it adopted Exemption 5") (quoting NLRB v. Sears Roebuck & Co., 421 U.S. 132, 154 (1975)).  Thus, the district court properly determined that Defendant met its Exemption 5 burden.

## D.

Plaintiff lastly appeals the district court's order that Plaintiff return or destroy two improperly redacted documents Defendant inadvertently disclosed.  Plaintiff argues that the documents were no longer confidential or privileged because another organization posted them online and thus the district court could not order their return.[5]  In support, Plaintiff cites Anderson, where we said that because text taken from journal publications "appear to be in the public domain, no meritorious claim of confidentiality" can exist to assert a FOIA exemption.  907 F.2d at 952 (citing C.N.A. Fin. Corp. v. Donovan, 830 F.2d 1132, 1154 (D.C. Cir. 1987)).  Plaintiff fails to explain, however, the similarity between a deliberate journal publication and the inadvertently disclosed confidential or privileged information here.  It is one thing to

---

[5] Plaintiff actually argues that it posted the documents online, but the screenshot it submitted as proof shows another organization posting the FOIA production.  In fact, that same page lists Plaintiff as a "related page," proving the organization that posted the documents differs from Plaintiff.

afford no confidentiality to a journal containing information purposefully made public, but it is quite another to afford no confidentiality to documents mistakenly disclosed and then made public after Plaintiff shared those documents with another organization to disseminate.  Thus, <u>Anderson</u> does not apply.

Plaintiff also relies on cases holding that an agency cannot tell a FOIA requester who it can share records with once the agency properly discloses the records.  <u>See</u> <u>Nat'l Archives & Recs. Admin. v. Favish</u>, 541 U.S. 157, 174 (2004) ("[O]nce there is disclosure, the information belongs to the general public. There is no mechanism under FOIA for a protective order allowing only the requester to see whether the information bears out his theory, or for proscribing its general dissemination."); <u>Maricopa Audubon Soc'y v. U.S. Forest Serv.</u>, 108 F.3d 1082, 1088 (9th Cir. 1997) ("FOIA does not permit selective disclosure of information only to certain parties . . . once the information is disclosed to Audubon, it must also be made available to all members of the public who request it.").  But for those cases to control, the agency must have properly divulged the documents.  Here, Defendant accidentally turned over two documents without proper redactions that Plaintiff never had a right to possess under FOIA.  So the issue is not one of who received them, but whether any member of the public had a right to receive them.

At bottom, Plaintiff argues that the district court could not authorize Defendant to claw back mistakenly disclosed documents because another organization posted them online.  But the government waives the ability to exempt a document under FOIA only after it has already released the same information to the public.  <u>See</u>

Herrick, 298 F.3d at 1193. Plaintiff does not claim that Defendant made the information public before the inadvertent disclosure occurred. Plus, none of the cases we relied on in Herrick involved inadvertent disclosures of exempt records. See id. (citing Pub. Citizen v. Dep't of State, 11 F.3d 198, 201 (D.C. Cir. 1993) (information previously disclosed through congressional testimony); Davis v. U.S. Dep't of Just., 968 F.2d 1276, 1279 (D.C. Cir. 1992) (information previously disclosed through tapes played during a trial); Afshar v. Dep't of State, 702 F.2d 1125, 1129–31 (D.C. Cir. 1983) (information not previously disclosed, but similar information that the government never acknowledged had allegedly been previously released to the public)). What is more, Plaintiff cites no authority barring courts from ordering the return or destruction of inadvertently disclosed records subject to FOIA exemptions. We agree with the district court that the public dissemination by a third party of inadvertently disclosed documents does not erase their exempt status and also affirm its claw-back order.

AFFIRMED.